UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RONALD YOUNG, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-732-JD-MGG |
| ZAC MCGUIGAN, et al., | |
| Defendants. | |

## OPINION AND ORDER

Ronald Young, a prisoner without a lawyer, is proceeding in this case "on a Fourteenth Amendment claim against Officer McGuigan, Officer Howard, Officer Crawford, Officer Trudy, and Bo Holcomb for money damages for locking him in his cell, depriving him of running water, and forcing him to eat on the floor or the toilet in August 2019[.]" ECF 6 at 3. Specifically, Young alleged in his complaint that, while he was housed in Marshall County Jail as a pretrial detainee, the defendants: (1) housed him in a four-man cell with five inmates, which created a trip and fire hazard; (2) shut off his running water for 5-and-a-half hours on August 29, 2019; and (3) locked down his dormitory from August 29, 2019, until August 30, 2019, and forced him to eat in his cell on the floor or toilet. ECF 5 at 1-2.

On January 29, 2021, the defendants moved for summary judgment. ECF 28. With the motion, the defendants provided Young the notice required by N.D. Ind. L.R. 56-1(f). ECF 30. Attached to the notice were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a response brief; and (B) any materials that the party contends raise a genuine dispute." After the time to respond expired, the court granted Young until May 5, 2021, to file a response to the summary judgment motion. ECF 33. The court warned Young that, if he did not respond by that date, the summary judgment motion would be considered without his response. *Id*. The deadline passed over three months ago, but Young has not responded. Therefore the court will now rule on the defendants' summary judgment motion.

I.    FACTS

The defendants submit affidavits, attesting to the following information.[1]

Overcrowding at Marshall County Jail

The Marshall County Jail was constructed in 2008 and has 230 permanent beds. ECF 31-1 at 1. Starting in 2018, Marshall County Jail's average daily population began to rise sharply, raising concerns about potential overcrowding. *Id.* at 2. Sheriff Hassell alerted and met with various county officials to discuss potential remedies to bring the jail population down. *Id.* Beginning in late 2018, Sheriff Hassell and county officials discussed and implemented various remedies to reduce the jail population, including: (1) making arrangements to transfer inmates to a different county; (2) expediting the

---

[1] Because Young did not respond to the summary judgment motion, the Court accepts the facts alleged in the defendants' affidavits as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .")

implementation of Criminal Rule 26 for assessment and release of pretrial detainees; (3) reducing sentences of currently incarcerated county inmates; (4) adding additional deputy prosecutors; (5) adding a fourth court to the County; and (6) constructing an addition to the Marshall County Jail which would house an additional 300 inmates. *Id.* Many of these options could not be implemented immediately and required various steps and the allocation of resources to accomplish. *Id.* at 2-3.

While the jail worked toward implementing these remedies, the average daily population continued to rise in 2019. *Id.* at 3-5. In January 2019 the average daily population was 218.5; in February 2019 the average daily population was 232.1; in March 2019 the average daily population was 240.7; in April 2019 the average daily population was 232.4; in May 2019 the average daily population was 238.3; in June 2019 the average daily population was 247.3, at which point, the permanent bed capacity was considered to be exceeded at the facility; in July 2019 the average daily population was 260.0; in August 2019 the average daily population was 291.6; in September 2019 the average daily population as 285.6; in October 2019 the average daily population was 287.3; in November 2019 the average daily population was 272.3; and in December 2019 the average daily population was 254.7. *Id.* at 3-4.

During late 2019, while the remedies to reduce the jail population were being increasingly implemented, the average daily population at Marshall County Jail began to trend downward. *Id.* at 5. In January 2020 the average daily population was 249.7; in February 2020 the average daily population was 233.9; in March 2020 the average daily population was 210.9; in April 2020 the average daily population was 183.5; in May

2020 the average daily population was 151.6; in June 2020 the average daily population was 151.9; in July 2020 the average daily population was 151; and in August 2020 the average daily population was 161. *Id.* at 5-6. The Marshall County Jail population has remained below 230 since February 24, 2020. *Id.* at 6.

During the period of overcrowding at Marshall County Jail, jail officials made several temporary adjustments to the facility to house the surplus of inmates. In June 2019, Chief Jail Officer Holcomb started adding floor space bed assignments by placing one additional inmate in the four-man cells. ECF 29-2 at 2. Officer Holcomb determined adding an additional inmate to the four-man cells would be the safest option because those cells have the largest amount of floor space and the inmates would be secured during lockdown hours. *Id.* If an inmate was assigned to the floor in a four-man cell, he was given a mat he could place anywhere in the cell. *Id.* Most inmates placed the mate in the center floor space between the permanent bunks, which lessened the space available for the inmates in the bunks but did not entirely obstruct their path. *Id.* at 3. Moreover, inmates in the permanent bunks were free to get out of their beds at the head or foot, which eliminated the need to navigate around the inmate assigned to the floor space. *Id.* Inmates in general population were free to spend most hours of the day out of their cell in the dayroom. *Id.*

In the summer of 2019, Officer Holcomb created additional sleeping space by adding additional bunks in the inmate worker dorm style pod and turning the recreation room into a temporary housing unit. *Id.* at 4. In September 2019, Officer Holcomb ordered, received, and distributed additional portable bunks. *Id.* Because each

4

pod contains the same number of dayroom seats as permanent bunks, the addition of one extra inmate in each four-man cell resulted in a shortage of dayroom seating. *Id.* As a result, when the dayroom had no available seats, the inmates were allowed to sit on their bunks, stand at the tables, or wait for a space to open up at one of the dayroom tables to eat their meals. *Id.* No inmate was ever forced to sit on the floor or on the toilet to eat. *Id.*

Young's Incarceration at Marshall County Jail

Young was incarcerated at Marshall County Jail as a pretrial detainee from March 20, 2019, until January 3, 2020. *Id.* at 1. Beginning in May 2019, Young was given a bunk assignment in a four-man cell in 1470 Pod. *Id.* at 5. A fifth inmate was assigned to Young's cell around June 19, 2019. *Id.* On August 29, 2019, a fight broke out in the 1470 Pod dayroom between 2 inmates, which resulted in the entire pod being locked down while the jail staff conducted an investigation. ECF 31-3 at 1-3. While the investigation was being conducted, inmates in several different cells created flooding which infiltrated the dayroom area. *Id.* at 3. As a result, Officer Crawford used the jail pod control system to temporarily turn the water off to the pod to stop further flooding and to allow the maintenance crew to arrive and assess the source of the flooding. *Id.* The flooding necessitated the need to call the maintenance crew to assess and remedy the flooding, as well as inmate workers to clean up the flood. *Id.* During the clean-up process, the inmates in 1470 Pod continued to be rowdy and engaged in escalating behavior. *Id.* at 3-4. As a result of this behavior, a 14-day lock down of 1470 Pod was imposed to preserve the safety and security of the facility. *Id.* at 4.

## II.     ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Because Young is a pretrial detainee, the court must assess his claims under the Fourteenth Amendment instead of the Eighth Amendment. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Id.* (quotation marks omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or

6

second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

First, Young argues the defendants violated his rights by housing him in a four-man cell with five inmates, which created a trip and fire hazard. ECF 5 at 2. The defendants argue summary judgment should be granted in their favor because their efforts to address the overcrowding of the jail were objectively reasonable in light of the surrounding circumstances. ECF 31 at 20-25. Specifically, they argue they reasonably accommodated all inmates while taking affirmative steps to reduce the jail population. *Id.* at 20-22.

Here, the jail's decision to place a fifth inmate in each four-person cell was rationally related to its objective of safely housing the surplus of inmates while the jail enacted large-scale remedies to reduce the jail population. *See Kingsley*, 135 S. Ct. at 2473. Young offers no evidence the defendants' conduct was punitive, arbitrary, or purposeless. *See Mulvania*, 850 F.3d at 856. Moreover, Young offers no evidence supporting his assertion that his housing arrangement created a trip or fire hazard, and the defendants provided attestations and photographs demonstrating the inmates still

7

had room to maneuver in the four-man cells with the addition of the fifth bunk. ECF 31-2 at 8-16. Thus, no reasonable jury could conclude the defendants violated Young's Fourteenth Amendment rights by housing him in a four-man cell with five inmates.

Second, Young argued the defendants violated his rights by shutting off his running water for five-and-a-half hours on August 29, 2019. ECF 5 at 1. The defendants argue they acted reasonably by shutting off the water. ECF 31 at 22-23. Here, there is no evidence the defendants acted objectively unreasonably by turning off Young's running water for five-and-a-half hours, as it is undisputed Officer Crawford turned the water off to eliminate the flooding and restored the water once the flooding was resolved. Young has offered no evidence the temporary water shut off was done for an illegitimate purpose unrelated to restoring order in the 1470 Pod. Thus, no reasonable jury could conclude the defendants violated Young's Fourteenth Amendment rights for shutting off his water for five-and-a-half hours.

Third, Young argues the defendants violated his rights by locking down his dormitory from August 29, 2019, until August 30, 2019, and forcing him to eat in his cell on the floor or toilet. ECF 5 at 1. Here, the undisputed evidence shows the jail ordered the lockdown of 1470 Pod in order to preserve order after the inmates caused a flood and engaged in rowdy behavior. Young has provided no evidence the lockdown was unrelated to the jail's goal of preserving order, or that the jail abused its discretion in ordering a lockdown. *See Kingsley*, 135 S. Ct. at 2473; *Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 326 (2012) (holding that correctional administrators must have "substantial discretion to devise reasonable solutions to the problems they

face," particularly when safety and security interests are at stake); *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (when evaluating reasonableness, "courts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security") (quotation marks omitted). Lastly, the defendants attest Young was not forced to eat on the floor or on the toilet during the lockdown, and Young provides no evidence contesting these attestations. Thus, no reasonable jury could conclude the defendants violated Young's Fourteenth Amendment rights by locking down the 1470 Pod from August 29 to August 30.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motions (ECF 28); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Ronald Young.

SO ORDERED on August 16, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT